UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| GARY EDWARDS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3: 12-03-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ALCOA, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of Defendant Alcoa, Inc.'s ("Alcoa") motion to dismiss [Record No. 18] and Plaintiffs Gary and Vickie Edwards' ("the Edwards") motion for leave to amend their complaint. [Record No. 24] Alcoa seeks dismissal of the original complaint filed by the plaintiffs, and objects to the Edwards' motion to amend. Its primary argument is that the Edwards' Complaint and proposed Amended Complaint both name the wrong parties as defendants.[1] Additionally, Alcoa asserts that the relief sought is not available under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. For the reasons explained below, the Court will grant Alocoa's motion to dismiss, in part, and grant the plaintiffs' motion to amend, in part.

---

[1] Alcoa notes in its Motion to Dismiss that it recites the facts as alleged by the plaintiffs in their Complaint, but "does not admit them." [Record No. 18-1, p. 1 n.1] In evaluating a motion to dismiss for failure to state a claim, the Court takes all factual allegations as stated by the plaintiff as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

-1-

# I.

## A.    Background

Plaintiff Gary Edwards was employed by Alumax, Inc. from June 2, 1970, until September 24, 1996.  [Record No. 1, p. 3 ¶ 6] He was 44.4167 years old on his last day of employment.  [Record No. 1-6, pp. 3-4] On October 3, 2006, Edwards asked about his potential payout from his pension benefit if he chose to retire at age 55.  [Record No. 1, p. 3 ¶ 7]  The "defendants"[2] responded by letters dated October 4, 2006, and February 3, 2007, stating the potential estimated benefits Mr. Edwards would be able to collect should he choose to retire at 55.  The letters explained that his monthly benefits were estimated to be $681.60 or $681.12 prior to April 1, 2014, and $426.04 or $431.89 after April 1, 2014.  [*Id.* ¶¶ 8-9]  Additionally, the letters indicated that as beneficiary, Vickie Edwards' death benefits were estimated to be $374.88 or $374.62 prior to April 1, 2014, and $234.32 or $237.54 after April 1, 2014.  [*Id.*]

On February 17, 2007, the defendants sent Gary Edwards a "Pension Election Confirmation for Alcoa Plan I Annuity" statement certifying and acknowledging the validity of the statement, which was then signed by the Edwards.  [*Id.,* pp. 3-4 ¶ 10] On the same date, the Edwards received a "Pension Election Confirmation for Alcoa Plan I Annuity" statement, which outlined the pension benefit elections the Edwards had chosen, and an "Alcoa Retirement Plan I Pension Election Authorization Form."  [*Id.,* pp. 3-4 ¶ 10; Record Nos. 1-8, 1-9] As required,

---

[2]     The plaintiffs' original Complaint does not specify, nor identify by name, which defendant they are referencing in any of their allegations — the Complaint only generally uses the terms "defendant" or "defendants."  As a result, it is not clear which defendant is the subject of each count of the plaintiffs' Complaint and which defendant allegedly took unlawful action against them; whether that be Alcoa, Inc. or "Trustees of Alcoa Retirement Plan I."  Despite this deficiency, the Court will attempt to decipher which party defendant the plaintiffs are referencing in each of their allegations.

both Vickie and Gary Edwards signed and certified the Election Authorization form stating that

Mr. Edwards elected the 90/55% Joint and Survivor Annuity plan which was set to commence

on April 1, 2007.  [Record No. 1-9]

As outlined in the October 4, 2006, letter to Gary Edwards, the 90/55% Joint and

Survivor Annuity plan ("90/55% Plan") states:

> This option provides a monthly payment until your death.  After your death, 55%
> of the amount you receive will be paid to your designated beneficiary as long as
> he or she lives.

> Under this option, the amount you would receive during your lifetime is less than
> the amount you would receive under the Single Life Annuity.  The amount of the
> reduction depends on the age of both you and your beneficiary and on the
> percentage to be continued after your death.

> The 90/55% Joint and Survivor Annuity is the automatic payment form if you're
> married, unless you are eligible for and elect a different payment option and your
> spouse consents.  If you're married and eligible to elect this option without your
> spouse as your beneficiary, your souse must consent to your election.

[Record No. 1-6, pp. 1-2]

As a result of his early retirement, Gary Edwards began receiving benefits under the plan

in the amount certified in the February 17, 2007 letter.  [Record No. 1-9]  However, after three

years of receiving the incorrectly calculated overpayment of benefit payments, on October 14,

2010, the defendant sent a letter to the Edwards stating that "[d]ue to an administrative error, the

total annuity payment was overstated."  [Record No. 1-10, p. 1]  The letter further noted that

Edwards should have actually been receiving annuity payments of $288.04 per month, instead

of $681.12 per month, and that in total he had been overpaid $16,902.44.  [*Id.*] The letter also

informed Edwards that the overpayment would be deducted from future payments and that, going forward, his benefits would be reduced to recoup the overpayment.  [*Id.*]

Edwards objected to this recalculation of benefits and appealed on February 9, 2011. [Record No. 1, p. 4 ¶ 14; Record No. 1-11, p. 1]  On October 4, 2011, the Alcoa Benefits Appeals Committee denied his appeal, although it offered to reduce the amount of repayment to 10% per pension payment period instead of the standard 25% to pay back the overpayment. [Record No. 1, p. 4 ¶ 15]  Edwards, however, declined to accept the Alcoa Benefits Appeals Committee's offer.  [*Id.*]  The plaintiffs allege that they have exhausted their administrative remedies and now seek relief from this Court.  [*Id.*, p. 5 ¶ 17]

The plaintiffs argue that Gary Edwards would not have chosen to retire on April 1, 2007, and elected the 90/55% Plan if it were not for prior written representations of the defendant dated October 4, 2006, February 3, 2007, and February 17, 2007.  They contend that, but for these representations, Edwards would have not retired.[3]  The plaintiffs, however, do not contend that the re-calculation of Mr. Edwards benefits payments is incorrect.

The Edwards filed suit against Alcoa, Trustees of Alcoa Retirement Plan I, and U.S. Secretary of Labor Hilda Solis on January 25, 2012, asserting the following claims: (1) equitable estoppel; (2) certain EIRSA violations; and (3) violations of ERISA's disclosure requirements. [Record No. 1, pp. 5-10]  Alcoa moved to dismiss the complaint and to strike jury demand on

---

[3]      Alcoa argues that the plaintiffs' use of the term "retired" is misleading, and "has no meaning other than that it appears to be synonymous with [Mr. Edwards'] election to commence benefits."  [Record No. 18-1, pp. 1-2]  Further, Alcoa notes that at the time of the Edwards' inquiry into Gary Edwards' pension benefit options on October 3, 2006, he was no longer employed by Alumax or Alcoa, and that it is not alleged whether he was employed in 2006 at all.  [*Id.*, p. 1]

May 10, 2012.  [Record No. 18]  After reviewing the briefs, the Court finds that oral argument

is not necessary to reach a determination in this matter.  [*See* Record No. 22, p. 7]

###   B.   The Proposed Amended Complaint

The allegations in the plaintiffs' proposed Amended Complaint do not substantively

differ from the original Complaint.  The plaintiffs do, however, substitute the named defendant

Alumax, Inc. for Alcoa, Inc., and the Bank of New York Mellon for the "Trustees of Alcoa

Retirement Plan I."  The Amended Complaint also uses the term "Defendant BMC" instead of

the terms "Defendant" and "Defendants," as used in the original Complaint.[4]  In addition to the

substitution of the defendants, the Amended Complaint also alleges that

> [p]laintiff Gary Edwards was continuously employed by this company first as
> Alumax, Inc. in 1970.  Later, it was sold to Alcoa in 1996, and Alcoa assumed all
> of the company's liabilities including pensions, and within a few weeks, the
> company was sold to Euromax.  In 2004 Euromax closed their doors.

[Record No. 24-2, p. 3 ¶ 8]

The plaintiffs' proposed Amended Complaint still consists of three counts asserting

claims for equitable estoppel, certain ERISA violations, and violations of ERISA's disclosure

---

[4]      Paragraphs 11 and 27 of the plaintiffs' proposed Amended Complaint defines Defendant Alumax,
Inc.'s Benefits Management Committee as "Defendant BMC" and "BMC."  Paragraph 9 of the Amended
Complaint alleges that "[t]he Plan Administrator has designated the Benefits Management Committee of its
parent company, Alcoa, Inc., to oversee the operation of the plan."  [Record No. 24-2, p. 3 ¶ 9]  In support
of this allegation, the plaintiffs cite Record No. 1-14, p. 15.  However, the only reference to the Benefits
Management Committee states that a party "will be required to submit an application to the Benefits
Management Committee to receive [his] pension."  [Record No. 1-14, p. 15]

        Based on the Court's review of the record, it would appear that the plaintiffs' intended to cite to
Record No. 1-14, p. 20.  In part, this page reads, "The Retirement Plan for Salaried Employees of Alumax
Inc. and Its Subsidiaries, an ERISA-covered benefit plan, is sponsored and administered by: Alumax Inc. .
. . [t]he Plan Administrator has designated the Benefits Management Committee of its parent company Alcoa
Inc., to oversee the operation of the plan."  [Record No. 1-14, p. 20]

requirements.  The plaintiffs' request for relief is unchanged except for the substitution of the names of the defendants.  Alcoa filed a response in opposition to the plaintiffs' motion for leave to file an amended complaint which argues that the plaintiffs' proposed Amended Complaint suffers from the same fatal flaws as its original Complaint.  Thus, it asserts that dismissal is appropriate.  [Record No. 25]

## II.

### A.    The Motion to Dismiss

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

In considering a 12(b)(6) motion, the Court is required to "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted).  However, the Court need not accept as true legal

conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").  Thus, Rule 12(b)(6) essentially "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery."  *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 997 (W.D. Tenn. Mar. 10, 2009).

**B.**     **The Motion for Leave to Amend**

Under Rule of Federal Civil Procedure 15, leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, the Court need not grant a motion for leave to amend a complaint under Rule 15 if the amendment would be futile.  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 519 (6th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) .  Futility exists if "the proposed amendment would not permit the complaint to survive a motion to dismiss."  *Miller,* 408 F.3d at 817 (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

## III.

### A.    Count I — Equitable Estoppel

The plaintiffs' first count seeks relief under a theory of equitable estoppel.  In support, the plaintiffs allege that the defendant made written misrepresentations of material facts regarding the amount of pension benefits to be paid to the Edwards.  [Record No. 1, p. 5, ¶ 19; Record No. 24-2, p. 6 ¶ 22]   The plaintiffs also allege that the defendant was aware of the true facts concerning the normal retirement terms of the plan for the calculation of benefits [Record No. 1, p. 5 ¶ 20; Record No. 24-2, p. 6 ¶ 23]; that the defendant, through its agents, knew and intended the plaintiffs to act upon these representations [Record No. 1, p. 5 ¶ 21; Record No. 24-2, p. 6 ¶ 24]; that the plaintiffs were "unaware of the amounts as they might have been alternatively calculated" [Record No. 1, p. 6 ¶ 22; Record No. 24-2, p. 6 ¶ 25]; and that the plaintiffs justifiably relied upon the misrepresentations in the planning for their retirement and in Mr. Edwards decision to choose early retirement.  [Record No. 1, p. 6 ¶ 23; Record No. 24-2, pp. 6-7 ¶ 26]

Alcoa argues that the plaintiffs' claim based upon a theory of equitable estoppel warrants dismissal for several reasons.  First, Alcoa argues that the plaintiffs name the wrong party. Additionally, it contends that this claim should be dismissed because the plaintiffs improperly pleaded equitable estoppel.  Specifically, Alcoa asserts that the Complaint neither identifies nor alleges any extraordinary circumstances, or identifies any detrimental reliance on the part of the plaintiffs.  Alcoa raises the same arguments regarding Count I in their objections to the plaintiffs' motion to amend their complaint.

> A party raising a claim of traditional equitable estoppel must demonstrate:
>
> (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).

The Sixth Circuit has extended the application of equitable estoppel to actions arising under ERISA, recognizing "that equitable estoppel may be a viable theory in ERISA cases." *Sprague v. GMC*, 133 F.3d 388, 403-04 (6th Cir. 1998); *see also Solomon v. Med. Mut. of Ohio*, 411 F. App'x 788, 794 (6th Cir. 2011); *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010).   Specifically, the Sixth Circuit has held that a

> plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

*Bloemker*, 605 F.3d at 444.

Thus, in the limited circumstances outlined above, a party may prevail on a claim of equitable estoppel to vary the terms of the unambiguous provisions of plan documents.  *See id.* at 443 (declining to extend the general rule outlined in *Sprague*, 133 F.3d at 404, that estoppel "cannot be applied to vary the terms of the unambiguous plan documents" in holding that the general prohibition against application of estoppel to unambiguous provisions was not sufficient

to outweigh the "extraordinary circumstances" presented by the facts of that case). However, the plaintiffs have failed to plead equitable estoppel adequately. Inherent in a claim for equitable estoppel is the requirement of an "element of fraud, either intended deceptions or such gross negligence as to amount constructive fraud." *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 553 (6th Cir. 2012) (internal quotation marks and citation omitted). As a result, a claim of equitable estoppel implicates Rule 9(b) of the Federal Rules of Civil Procedure and requires heightened pleading in all allegations of fraud.

Here, the plaintiffs fail to allege sufficient facts to plead fraud with particularity,[5] as required by Rule 9(b). A complaint is sufficient for the purposes of Rule 9(b) if it alleges "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendants' fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks omitted). Regarding fraudulent intent, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). And because the plaintiffs' Complaint fails to adequately plead the traditional elements of equitable estoppel by failing to plead fraud with particularity, the Court need not examine further whether the facts alleged plausibly provide for the "extraordinary circumstances" required to find a viable claim of equitable estoppel under ERISA.[6] *See Cataldo,*

---

[5]     By their own admission, the plaintiffs cannot plead fraud with particularity.  [Record No. 22, p. 6]

[6]     The plaintiffs' Complaint and proposed Amended Complaint are devoid of any factual assertions which would constitute "extraordinary circumstances," as required by *Bloemker*.  In response to the defendant's motion to dismiss, the plaintiffs argue:

> "Defendants, a multi-million dollar corporation seems to say that '. . . - a few hundred dollars a month - . . . ' is not an error of 'magnitude' isn't worth discussing.  However, as the Plaintiffs are average middle-class citizens, in this unsteady economy, this few hundred

-10-

676 F.3d at 553 (affirming the district court's dismissal of the plaintiff's ERISA equitable estoppel claim because the plaintiff failed to plead fraud with particularity pursuant to Rule 9(b)).

The plaintiffs' proposed Amended Complaint does not cure this defect.  The proposed Amended Complaint identifies the alleged defendant as "Defendant BMC" instead of using the term "defendant."  Additionally, the plaintiffs' proposed Amended Complaint adds the phrase "nor the Defendants," to paragraph 25 which does not appear in parallel paragraph 22 of the original Complaint.  Unfortunately for the plaintiffs, their proposed Amended Complaint does not remedy the deficiencies of this claim, and the Court will deny their motion to amend this count of the Complaint on grounds of futility.  The Court will grant the defendant's motion to dismiss this count against all defendants.

### B.        Count II — The Alleged ERISA Violation

Count II of the Complaint asserts a claim for breach of fiduciary duty predicated upon the alleged misrepresentations made to the plaintiffs concerning Gary Edwards' benefit

---

dollars a month can make a major difference in basic everyday lifestyle.  The Defendants play this like the children's game of 'hot potato', passing the issue to another, never taking ownership or responsibility for leading the Plaintiffs to ultimate decision."

[Record No. 22, p. 6-7 (errors in original)]  The plaintiffs' argument to this point is both incoherent and unpersuasive.  While the *Bloemker* Court did not expressly identify what constituted the "extraordinary circumstances," the plaintiffs' "argument" that a few hundred dollars is a lot of money to a middle class family, and constitutes an error of great magnitude, misses the mark and fails to plead the necessary element of "extraordinary circumstances."  *See Starks v. Mars, Inc.*, 879 F. Supp. 2d 752, 769-72 (N.D. Ohio July 17, 2012) (examining what constitutes "extraordinary circumstances" and noting that a showing of the exceptional circumstances element of an ERISA estoppel claim requires the plaintiff to point to circumstances beyond the ordinary and generally involve acts of bad faith on the part of the defendant).  Thus, the plaintiffs have failed to sufficiently allege a claim that "extraordinary circumstances" exist to allow the Court to further entertain a claim of ERISA equitable estoppel.

calculations.  Specifically, the plaintiffs allege that the defendants[7] breached their fiduciary duty, pursuant to 29 U.S.C. § 1104(a)(1)(d) by recklessly failing to administer "the Plan solely for the benefit of the beneficiaries and according to the terms of the Plan document."  [Record No. 1, p. 6 ¶ 25; Record No. 24-2, p. 7 ¶ 28]  The plaintiffs further allege that the defendants breached their duties under ERISA and the Plan by authorizing the miscalculated payment to Edwards in an amount that was 42% above the correctly calculated benefits amount Mr. Edwards was due. [Record No. 1, p. 7 ¶¶ 27-29; Record No. 24-2, p. 8 ¶ 32]  The plaintiffs assert that the failure "to recognize an error of this magnitude [was] grossly negligent."  [Record No. 1, p. 7 ¶ 31; Record No. 24-2, p. 8 ¶ 34]

Alcoa counters by arguing that the plaintiffs fail to adequately plead breach of fiduciary duty.  Specifically, it contends that the misstatements alleged in the plaintiffs' Complaint were not made in a fiduciary capacity, that the plaintiffs misidentify the alleged fiduciary, and that the plaintiffs fail to identify any fiduciary act.  In reply, the plaintiffs simply state that *someone* breached their fiduciary duty to the Plaintiffs.[8]  [Record No. 22, p. 6]

---

[7]     The plaintiffs' original Complaint alleges that the Trustees are the named defendant of Count II. [Record No. 1, pp. 6-7 ("The Trustees are named fiduciaries under ERISA")]  The plaintiffs' Amended Complaint alleges that the "Defendant Plan Trustees, The Bank of New York Mellon, Master Trustee and Defendant Alumax, Inc., through its Benefits Management Committee ("BMC" or "Defendant BMC") are named fiduciaries under ERISA," and are the named defendants of Count II.  [Record No. 24-2, pp. 7-8]

[8]     In their Response to the defendant's motion to dismiss, the plaintiffs also argue:

> To find a breach of fiduciary duty has occurred, the fiduciary's conduct must amount to more than a clerical error, yet, the Defendant contends that "the entity" which communicated with the Edwards relative to their future benefits was not acting as a fiduciary when Edwards benefits was calculated and communicated to him, "does not rise to the level of a fiduciary act," is certainly incongruous.

[Record No. 22, p. 6]  It is unclear what exactly the plaintiffs are trying to articulate here, and the Court will not attempt to decipher or glean a coherent argument from such incomplete thoughts.  *See McPherson v.*

-12-

To establish a claim for breach of fiduciary duty based on an alleged misrepresentation concerning plan coverage to plan beneficiaries under ERISA, a plaintiff must show: "(1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to their detriment." *James v. Pirelli Armstrong Tire Corp.,* 305 F.3d 439, 449 (6th Cir. 2002) (citations omitted).   Thus, under ERISA, "a plaintiff must show that the defendant was acting in a fiduciary capacity when it made the challenged representations" concerning coverage. *Starks v. Mars, Inc.*, 790 F. Supp. 2d 658, 666 (N.D. Ohio May 11, 2011) (citing *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2006)).  The Sixth Circuit has held that "a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *James*, 305 F.3d at 452 (internal quotation marks and citations omitted). Additionally, "[m]isleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty.'" *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (quoting *Berlin v. Mich. Bell Tele. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)).

As a result, the first question is whether any of the named defendants are a fiduciary. ERISA defines that term as follows:

---

*Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation marks omitted) (omission in original)).

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Thus, a party acting in the capacity of a manager, administrator, or financial advisor to a plan is a fiduciary under ERISA. *See Starks*, 790 F. Supp. 2d at 666.

The Sixth Circuit has found that "the definition of a fiduciary under ERISA is a functional one, [and] is intended to be broader than the common-law definition." *Smith v. Provident Bank,* 170 F.3d 609, 613 (6th Cir. 1999) (citing *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 418 n. 3 (4th Cir. 1993)). "For the purposes of ERISA, a 'fiduciary' not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets." *Moore*, 458 F.3d at 438. However, it is well-settled that under ERISA, a party is a fiduciary "only with respect to those aspects of the plan over which he or she exercises authority or control." *Id.* (citing *Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1993)).

### 1.    The Bank of New York Mellon

The plan documents provided by the plaintiffs state that the Bank of New York Mellon is the "Plan Trustee" or "Master Trustee," and that it is one of the many "Investment Managers" of the plan. [Record No. 1-14, pp. 21, 32]   However, upon review of the plan documents, the only role the Bank of New York Mellon holds is to "manage various portions of the Master Trust

-14-

Fund" and to hold the assets of the plan.  [Record No. 1-14, p. 32]  None of the plan documents provided by the plaintiffs indicate that the Bank of New York Mellon had any role in benefit determinations.  Moreover, the plaintiffs do not even allege that the Bank of New York Mellon was the party which calculated or communicated with them regarding their benefit determinations and the alleged misrepresentations.  Therefore, to the extent it was an ERISA fiduciary, the plaintiffs' Amended Complaint fails to state a viable claim for breach of fiduciary duty against the Bank of New York Mellon, Master Trustee.  *See Moore*, 458 F.3d at 438.  As a result, Count II will be dismissed against the Bank of New York Mellon.

### 2.  Alumax Inc.

### a.  A Plan Administrator is a Fiduciary

The plaintiffs' Amended Complaint alleges that Alumax Inc., through its Benefits Management Committee are named fiduciaries under ERISA.  [Record No. 24-2, p. 7 ¶ 27]  Additionally, the plan documents provided by the plaintiffs names Alumax Inc. as the "Plan Administrator," and state that the "plan administrator has designated the Benefits Management Committee of its parent company, Alcoa Inc., to oversee the operation of the plan."  [Record No. 1-14, p. 20]  Specifically, the plan documents state:

> The Plan Administrator has the discretionary authority to: determine eligibility under all provisions of the Plan; correct defects, supply omissions, and reconcile inconsistencies in the Plan; ensure that all benefits are paid according to the Plan; interpret Plan provisions for all participants and beneficiaries; and decide issues of credibility necessary to carry out and operate the plan.

[*Id.*]  Because in an ERISA action concerning benefits the proper defendant is the plan administrator, it would appear that Alumax Inc. is a properly-named party defendant.  *See*

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 522-23 (6th Cir. 2010) (citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988)).

In its objections to the plaintiffs' motion to amend their complaint, Alcoa argues that Alumax Inc. is not the Plan Administrator and that defendant BMC was not the party which made the misrepresentations at issue. [Record No. 25, p. 12] In support of this argument, Alcoa contends that the SPD which the plaintiffs attached to their Complaint and which states that Alumax Inc. is the Plan Administrator, is actually the SPD for the "Retirement Plan for Salaried Employees of Alumax, Inc. and Its Subsidiaries." [*Id.*, p. 6] Alcoa further argues that Mr. Edwards made his election under the Alcoa Retirement Plan I, and that the SPD referenced does not purport to be applicable to that plan. [*Id.*] However, as noted by Alcoa in a footnote, Alcoa Retirement Plan I was the successor for the Retirement Plan for Salaried Employees of Alumax, Inc. and Its Subsidiaries. [*Id.*]

While Alcoa's arguments on this point may be valid, the Court is unable to dispositively conclude *via* a motion to dismiss that Alumax Inc. through its Benefits Management Committee was not the Plan Administrator of Gary Edwards' plan at the time of the alleged breach of fiduciary duty. The letter dated November 2004 and titled "Update for Alumax Salaried Retirement Plans," states that the Retirement Plan for Salaried Employees of Alumax Inc. and Its Subsidiaries merged into the Alcoa Retirement Plan I effective January 1, 2004. [Record No. 1-14, p. 26] What this document does not say, however, is that Alumax Inc. is no longer the Plan Administrator. It is not until December 2008, in a letter titled "Update to Administrative Information Alcoa Retirement Plan I," that it is noted that the Plan Administrator is "Plan

-16-

Administrator — Alcoa Retirement Plan I, Alcoa Inc." [Record No. 1-14, p. 30] This letter states that the "plan administrator has designated the Benefits Management Committee to oversee the operation of the plan and the Benefits Management Committee has all the foregoing discretionary authority." [*Id.*] In italicized print at the bottom of the page it further states, "*[t]his Update is a Summary of Material Modifications (SMM) for the Alcoa Retirement Plan I, effective December 1, 2008. Please read this Update carefully and keep it for future reference. If there are any differences between this document and the Plan, the plan documents will govern.*" [*Id.*]

December 1, 2008, post-dates the dates of the alleged misrepresentations made to the plaintiffs which are the basis for the charge of breach of fiduciary duty. [*See* Record Nos. 1-6 through 1-9] Therefore, because the Court is required to accept all of plaintiffs' factual allegations as true when considering a defendant's 12(b)(6) motion, and given the inconsistencies in the record, the Court is unable to conclude that allowing the plaintiffs to amend their Complaint to add Alumax Inc. as a defendant would be futile. The Court, therefore, will grant the plaintiffs leave to amend their complaint as to this count, naming Alumax Inc. as defendant.

### b.    Fiduciary Act

The defendant also argues extensively, in both its motion to dismiss and its objections to the plaintiffs' motion to amend their complaint, that the act of calculating and communicating Mr. Edwards' benefits is *per se* not a fiduciary act which is actionable and, therefore, cannot constitute the basis of a claim for breach of fiduciary duty. [Record No. 18-1, pp. 9-11 ; Record

No. 25, p. 12]  Specifically, Alcoa argues that "[w]hen acting only to perform a ministerial function, such as communicating with employees or answering employees' inquiries related to benefits and calculating the amount of plan benefits, a plan administrator is not acting as an ERISA fiduciary for that action"[9]  [Record No. 25, p. 11], and that the "calculation and communication of Plaintiffs' benefit does not rise to the level of a fiduciary act."  [*Id.*, p. 12]

In support, Alcoa cites to a number of cases.  However, each case appears to be factually distinguishable or distinguishable based on the procedural posture of the present matter. Additionally, in the cases cited by the defendant, the courts were able to determine based on the facts in the record that the party who miscalculated or mis-communicated the incorrect information was a party not acting in a fiduciary role, but a party acting as a claims processor, provider of administrative services, or benefits administrator.  *See, e.g., Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991); *Easa v. Florists' Transworld Delivery Assoc.*, 5 F. Supp. 2d 522, 529 (E.D. Mich. Apr. 24, 1998); *Hart v. Equitable Life Assur. Soc'y*, 75 F. App'x 51, 52 (2d Cir. 2003) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 502-03 (1996) (holding that communicating with plan beneficiaries about terms of their benefit plans is a fiduciary act); *Flanigan v. GE*, 242 F.3d 78, 84 (2d Cir. 2001) ("Communicating information about future plan benefits is indeed a fiduciary obligation.")).

This Court is unable to make these determinations on the current state of the record and in the context of a 12(b)(6) motion.  The Court concludes that a fiduciary's mis-communication or miscalculation of benefits can, in certain circumstances, be actionable as a breach of fiduciary

---

[9]      As detailed earlier in this Memorandum Opinion and Order, the plaintiffs' response to these arguments wholly fails to address the defendant's position on this issue.

duty under ERISA. Moreover, because the plaintiffs have adequately pleaded this count of their complaint, the Court will grant their motion to amend Count II regarding defendant Alumax Inc. Alcoa's motion to dismiss on this count will be denied.

### C.      Count III — Alleged Violation of ERISA's Disclosure Requirements

In the final count of their Complaint, the plaintiffs allege that 2000 Summary Plan Description ("SPD"), which is attached as Exhibit 9 to their Complaint,

> does not clearly identify *any* circumstances where there may be a reduction of benefits for miscalculation after the benefits have been certified to the retirees, there was no disclosure of any reduction of benefits for incorrect calculation, and furthermore, there was no disclosure of any possible recovery or recoupment of any amount alleged to be overpaid after the benefits have been calculated, certified, and paid to the Plan participant or beneficiary, that, in fact, cause a loss or reduction of the benefits to the participant that the participant might reasonably expect after the benefits were certified true and correct.

[Record No. 1, p. 8 ¶ 37; Record No. 24-2, p. 9  ¶ 40 (emphasis added)]  Additionally, the plaintiffs assert that the defendants breached their fiduciary duty for failing to disclose these circumstances of potential reduction of benefit payments.  [Record No. 1, p. 8 ¶ 38; Record No. 24-2, pp. 9-10 ¶ 41] These allegations are fully contradicted by the plain text of the SPD, which the plaintiffs have attached as an exhibit to their Complaint.

The SPD in relevant part states:

**How Benefits Can Be Forfeited or Delayed**
. . .
Benefits also may be lost if they were paid or described to you in error.  If necessary, the Company may make reductions from your Plan benefits (as allowed by law) to recover benefits paid to you in error.

[Record No. 1-14, p. 18]  Additionally, the Alcoa Retirement Plan I Pension Estimate Calculation Statement letter sent to the plaintiffs on October 4, 2006, states that "Alcoa reserves

-19-

the right to correct any errors.  Specifically, if the estimate conflicts with the benefit defined by the Alcoa Retirement Plan I, the Alcoa Retirement Plan I will prevail."  [Record No. 1–6, p. 5] The February 3, 2007, letter titled "Alcoa Retirement Plan I Starting Your Pension Benefit" received by the plaintiffs, and the Alcoa Retirement Plan I Pension Authorization Form signed by the plaintiffs both contained similar disclosure statements.  [Record No. 1-7, p. 5; Record No. 1-9, p. 2]

Because the claims contained in this count alleging that the SPD failed to contain certain disclosures that benefits could be reduced due to mistaken overpayments are factually unsupported and wholly inaccurate, Count III will be dismissed against all defendants.[10]

### D.      Jury Demand

In its motion to dismiss, Alcoa argues that suits under ERISA do not permit a jury trial and that the plaintiffs' jury demand should be stricken.  [Record No. 18-1, p. 12]  In their response to Aloca's motion to dismiss, the plaintiffs state: "[t]he Plaintiffs concede the point that a jury is not warranted in this ERISA action.  It is not pled in the body of the Complaint, nor in their prayer for relief, and apologize for it being included in the document title."  [Record No.

---

[10]      To the extent that the plaintiffs argue in their response to the defendant's motion to dismiss that the "SPD was not provided to Plaintiff, until he was informed of the over payment," and that Mr. Edwards "received a copy of the SPD simultaneously with the notice of overpayment" [Record No. 22, p. 6], this was neither alleged in the plaintiffs' original Complaint or their Amended Complaint.  Additionally, based upon the documentation provided by the plaintiffs it appears that the plaintiffs did not raise this argument during their administrative appeal, nor even allege that they did so in either complaint.  [Record No. 1-11] Therefore, the Court will not entertain these arguments further.  *See Harris v. Pepsi Bottling Grp., Inc., Location No. 42*, 438 F. Supp. 2d 728, 731 (E.D. Ky. June 30, 2006) ("[I]t is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing suit for recovery on an individual claim." (internal quotation marks omitted)).

22, p. 7] The defendant's position is well-taken.  As a result, the plaintiffs' jury demand will be stricken.

**IV.**

For the reasons discussed above, it is hereby

**ORDERED** as follows:

(1)     Defendant Alcoa, Inc.'s Motion to Dismiss the Complaint and to Strike Jury Demand [Record No. 18] is **GRANTED**, with respect to Count I and III in their entirety.  The motion is **DENIED** with respect to Count II.

(2)     Plaintiffs' Motion for Leave to File Amend Complaint [Record No. 24] is **GRANTED**, with respect to Count II.  Alumax Inc. will be **SUBSTITUTED** as the party defendant in the place of Alcoa, Inc. and Trustees of Alcoa Retirement Plan I.

(3)     Plaintiffs' Motion for Leave to File Amend Complaint [Record No. 24] is **DENIED**, with respect to Count I and III, and with respect to naming the Bank of New York Mellon as a party defendant.

(4)     The plaintiffs' jury demand shall be **STRICKEN**.

This 14th day of February, 2013.



Signed By:

*Danny C. Reeves*   DCR

**United States District Judge**